<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARTHA HICKS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 3:16-cv-00927-BRM-LHG |
| v. | : | |
| | : | **OPINION** |
| NEW JERSEY DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants' Motion for Summary Judgment. (ECF No. 77.) Plaintiff Martha Hicks ("Hicks") opposes the motion. (ECF No. 82.) Having reviewed the parties' submissions[1] filed in connection with the motion and having declined to hear oral

---

[1] The Court declines to consider any footnotes. A brief with a permissible number of pages nonetheless violates applicable page limits if the brief achieves compliance by shifting significant, substantive discussion into footnotes. *See, e.g.*, *Fleming v. Cty. of Kane*, 855 F.2d 496, 498 (7th Cir. 1988); *Gordon v. Amadeus IT Grp., S.A.*, 194 F. Supp. 3d 236, 239 n.1 (S.D.N.Y. 2016); *Bollea v. Clem*, 937 F. Supp. 2d 1344, 1348 n.1 (M.D. Fla. 2013); *Mui Ho v. Toyota Motor Co.*, 931 F. Supp. 2d 987, 990 n.1 (N.D. Cal. 2013); *Ohio Head Start Ass'n v. U.S. Dep't of Health & Human Servs.*, 873 F. Supp. 2d 335, 344 (D.D.C. 2012); *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127, 1131 (W.D. Wash. 2007). In this case, both parties shift significant discussion into their footnotes, including substantive discussion more appropriately included in the main text: for instance, Defendants' statute of limitations argument appears solely in a footnote, with no mention in the main text. (ECF No. 77-1, at 40 n.29.) This is not a case in which the number of footnotes proliferates because the parties write their briefs in the style of a law review, with citations in footnotes rather than main text. *See Albion Eng'g Co. v. Hartford Fire Ins. Co.*, No. 17-CV-3569, 2018 WL 1469046, at *3 (D.N.J. Mar. 26, 2018). Because the parties' briefs would exceed the page limits of Local Civil Rule 7.2(b) if the substantive discussion were shifted back into the main text, the Court declines to consider any footnotes. Nonetheless, the Court has reviewed the contents of each footnote and determined that nothing in the footnotes would compel a different result if the Court were to consider them.

argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **DENIED**. An appropriate order will follow.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Hicks, a Hispanic woman of Puerto Rican descent, is employed as a Senior Corrections Officer with the New Jersey Department of Corrections ("DOC") at Garden State Correctional Facility. (Hicks Dep. (ECF No. 82-3) 46:5-6, 82:13-16; Admin. Decision of ALJ Jeff S. Masin dated Aug. 11, 2014 (ECF No. 82-21) at 7.) Hicks brings this action for unlawful employment discrimination alleging (1) unlawful discrimination on account of her race and her Puerto Rican heritage, (2) a hostile work environment on account of (a) unlawful discrimination on account of her race and her Puerto Rican heritage and (b) unlawful retaliation following her charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), and (3) a violation of the New Jersey Law Against Discrimination ("NJLAD"). (Am. Compl. (ECF No. 21) ¶¶ 32-47.) The Defendants include DOC, Major Gerald Caldarise ("Caldarise"), and Lieutenant Bernard Willie ("Willie").[2] (ECF No. 21 ¶¶ 7-9.)

On April 24, 2013, Hicks and her non-Hispanic black male colleague Officer Antonio Price ("Price") were assigned to the "entry search area" at Garden State Correctional Facility. (ECF No. 82-21, at 2; Letter from EEOC to Antonio Price (Aug. 07, 2015) (ECF No. 79), at 1.) Two other white male officers—Officer Timothy Grunza ("Grunza") and Officer Leo Mitchell ("Mitchell")—were assigned to a nearby "armory" post which controls the gate allowing entrants into the facility's secured inner perimeter and has full view of the screening area to see who or what has and has not been screened. (Dep. of Gerald Caldarise (ECF No. 82-7) at 70:23-76:8;

---

[2] Hicks does not bring a hostile work environment claim against Willie. (Pl.'s Opp'n to Mot. for Summ. Judgment 24 n.6.)

ECF No. 82-3 at 124:7-9.) On this day, two social workers entered the facility twice: first in the morning, when both Hicks and Price were assigned to and present at the entry search area, and then (after leaving the facility for lunch) the social workers re-entered the facility in the afternoon, when only Price was assigned and present at the entry search area. (ECF No. 82-21, at 2.)

In the morning, Hicks failed to follow appropriate procedure[3] when screening one of the social workers. (ECF No. 82-21, at 12-13.) In the afternoon, Price failed to follow appropriate procedure when screening one of the social workers, which lead to the improper admission of a cell phone into the facility. (ECF No. 82-21, at 12-14.) The admission of a cell phone into a DOC facility is a serious security risk. (ECF No. 82-21, at 2.)

Both Hicks and Price received 30-day suspensions following the discovery of the cell phone inside the secured perimeter. (ECF No. 82-21, at 17.) Grunza and Mitchell were not sanctioned for their roles in the search incident. (Dep. of Bernard Willie (ECF No. 82-6) at 88:13-16, 89:4-6.) A non-Hispanic supervising officer, Sgt. Tangelique Carradine, violated the security procedure by failing to report to the entry search area when requested and made untruthful statements about her failure during a subsequent investigation, but received only a five-day suspension. (ECF No. 82-6, at 76:7-79:12, 81:19-22.)

Caldarise was involved in the imposition of discipline in each of these cases, as well as

---

[3] The evidence conflicts concerning whether Hicks followed appropriate procedure in the morning. Hicks testified that she did not violate any policies or procedures. (ECF No. 82-3, at 173:23-174:8.) Defendants submitted contrary testimony. (Cert. of Bernard Willie (ECF No. 77-4) ¶ 4.) While normally the Court would view the evidence in the light most favorable to non-movant Hicks, Defendants argue that collateral estoppel precludes Hicks "from attempting to argue here that somehow she appropriately performed her security duties at the Entry Search Area" on April 24, 2013. (ECF No. 85, at 14-15 n.12.) Because the Court's decision remains the same whether or not collateral estoppel applies, the Court assumes without deciding that Hicks failed to follow appropriate screening procedures the morning of April 24, 2013.

other, similar incidents in which he imposed lesser sanctions on non-Hispanic officers. (Pl.'s Resp. to First Interrogatories (ECF No. 82-26) ¶ 16.) For instance, Caldarise imposed a 5-day suspension on a non-Hispanic officer who permitted a civilian without identification entry into the secured perimeter. (ECF No. 82-26 ¶ 16.) According to Hicks, Caldarise was also known to allow non-Hispanic officers to avoid suspension and instead undergo counseling and retraining when the officers violated rules, but Caldarise did not offer Hicks a similar opportunity following the April 24, 2013 incident. (ECF No. 82-26 ¶ 16.)

Hicks unsuccessfully appealed her suspension in state administrative proceedings. (Final Admin. Order of the N.J. Civ. Serv. Comm'n dated Sept. 17, 2014 (ECF No. 82-23) at 1-2.) While these proceedings were pending, Hicks filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 29, 2013. (Notice of Charge of Discrim'n (ECF No. 82-24) at 1.) Hicks testified that after she filed this charge, Caldarise began an increased campaign of harassment with incidents arising almost weekly. (ECF No. 82-26 ¶ 16.) For instance, Hicks's testimony indicates that Caldarise would stare at her in an attempt to intimidate her. (ECF No. 82-3, at 97:14-18.) Hicks further testified that Caldarise spoke repeatedly to other officers about her disciplinary record, sometimes directly in front of her. (ECF No. 82-3, at 90:4-14, 95:21-25, 96:1-3.) According to Hicks's testimony, Caldarise projected a negative demeanor to Hicks, either behaving "very rude and nasty" to her or treating her "like [she] was not even there." (ECF No. 82-3, at 90:20-22.) Hicks testified that Caldarise withheld security-sensitive information from her about how an inmate drafted a fictional depiction of sexual activity featuring multiple female corrections officers—including Hicks—even as Hicks was ordered to transport another inmate from a location that included the authoring inmate. (ECF No. 82-3, at 92:13-25, 93:1-22.)

After investigating Hicks's charge, the EEOC was "unable to conclude that the information obtained establishes" unlawful discrimination against Hicks and closed its file on October 2, 2015. (EEOC Dismissal and Notice of Rights (ECF No. 82-25) at 1.) Hicks filed this action in the Eastern District of Pennsylvania on October 19, 2015. (Compl. (ECF No. 1) at 1.) By stipulation of the parties, that court transferred the case to this Court on February 17, 2016. (Stipulation to Transfer Venue (ECF No. 12) at 2.) After Hicks filed an Amended Complaint raising a claim under NJLAD against DOC and Caldarise (Am. Compl. (ECF No. 21) ¶¶ 44-47), this Court dismissed the NJLAD claim without prejudice against both Defendants. *Hicks v. N.J. Dep't of Corr.*, Civ. No. 16-927, 2017 WL 4858122, at *5 (D.N.J. Oct. 27, 2017); *Hicks v. N.J. Dep't of Corr.*, Civ. No. 16-927, 2017 WL 168917, at *4 (D.N.J. Jan. 17, 2017). All Defendants jointly moved for summary judgment on the remaining claims. (ECF No. 77.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable

inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.

*Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III.   DECISION

#### A.   Claims for Discrimination on the Basis of Race and National Origin[4]

Defendants ask this Court to issue summary judgment in its favor on Hicks's claims for discrimination on account of race and national origin, arguing that Hicks cannot establish her prima facie case of discrimination—specifically, that Hicks cannot establish that she was qualified for her position or that the circumstances of her suspension warrant an inference of unlawful discrimination—and further argue that Hicks cannot establish that her violations of security policy were a pretext for unlawful discrimination. The Court disagrees, and denies summary judgment on these claims.

Whether arising under Title VII of the Civil Rights Act of 1964 or under 42 U.S.C. §§ 1981 & 1983, Courts analyze claims for race and sex discrimination under the *McDonnell Douglas* burden-shifting framework. *See Stewart v. Rutgers Univ.*, 120 F.3d 426, 432 (3d Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)). The framework has

---

[4]  Hicks claims national origin discrimination on account of her Puerto Rican heritage. "[T]he term Puerto Rican can designate national origin for purposes of a federal discrimination suit . . . ." *Chiang v. Veneman*, 385 F.3d 256, 269 (3d Cir. 2004), *abrogated on unrelated grounds*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3d Cir. 2008).

three basic steps. First, the plaintiff must put forward a prima facie case of race or national origin discrimination by a preponderance of the evidence. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "Once a plaintiff makes a prima facie case of discrimination," the analysis moves to the second step: "the burden shifts to the [defendant] to provide a legitimate, nondiscriminatory reason for its actions." *Tucker v. Thomas Jefferson Univ.*, 484 F. App'x 710, 712 (3d Cir. 2012). "If the defendant does so," the analysis proceeds to the third step: "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If each side meets its burden at each stage, then summary judgment is inappropriate. *Whishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

Each step in the framework requires its own separate analysis. The first stage—where the plaintiff make a prima facie case of discrimination plaintiff must show: (1) she belongs to a protected class, (2) she is qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances support an inference of unlawful discrimination. *In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018). Among the circumstances that support an inference of unlawful discrimination are if non-members of the protected class receive more favorable treatment than plaintiff under similar circumstances. *Cf. Sarullo*, 352 F.3d at 797 n.7 (noting that an inference of discrimination arises if the employer's actual or attempted treatment of similarly situated employees outside the protected class is more favorable than the employer's treatment of the plaintiff). "The elements of [the] prima facie case, however, must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup Int'l*, 82 F.3d 578, 581 (3d Cir. 1996). However flexibly the Court must apply these elements, a plaintiff must nonetheless establish her prima

facie case by a preponderance of the evidence. *Sarullo*, 352 F.3d at 797.

With regard to the second stage—the requirement for the defendant to articulate legitimate, nondiscriminatory reasons for its actions—the defendant need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The defendant has only a "burden of production"—that is, the defendant "need not prove that the tendered reason *actually* motivated its behavior." *Id.*

At the third stage—the plaintiff's obligation to demonstrate the pretextual nature of the defendant's explanation—the analysis "focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for intentional race discrimination." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999). The plaintiff may meet its burden in several ways: for instance, by "show[ing] that the [defendant] has previously discriminated against [the plaintiff], that the [defendant] has previously discriminated against other persons within the plaintiff's protected class, or that the [defendant] has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

1. **Prima Facie Case**

Defendants argue that Hicks cannot demonstrate she was qualified for her position (the second element of her prima facie case), and further argue that Hicks cannot demonstrate that the circumstances of Hicks's adverse employment action give rise to an inference of unlawful discrimination (the fourth element of her prima facie case). The Court disagrees on both counts.

First, the Court finds that Hicks was qualified for her position. She received her training

at the DOC Academy in Skillman, New Jersey. (ECF No. 82-1 ¶¶ 2-3; ECF No. 86 ¶¶ 2-3.) By the time of the incident, Hicks was promoted and received multiple salary increases over her sixteen years with DOC, performing satisfactory work with only two reprimands, and garnered several performance evaluations rating her as "commendable" or "exceptional." (ECF No. 82-1 ¶¶ 4, 6, 15-17, 19; ECF No. 86 ¶¶ 4, 6, 15-17, 19.) Hicks's colleagues described her as "qualified." (ECF No. 82-1 ¶¶ 35-36; ECF No. 86 ¶¶ 35-36.)

Defendants do not contest that Hicks was qualified to be a correctional officer. Rather, they contend that Hicks cannot demonstrate the second element of her prima facie case because she improperly conducted the searches at issue, in violation of DOC policies. The Court rejects this argument because the second element of the prima facie case focuses on Hicks's qualifications for her position, not whether she made an isolated error or omission in the performance of her duties. *See, e.g.*, *Tribune Media*, 902 F.3d at 402.

Second, the Court finds that the circumstances of Hicks's adverse employment action give rise to an inference of unlawful discrimination. *See Sarullo*, 352 F.3d at 797. For instance, a non-Hispanic officer involved in the search on April 24, 2013, received equal punishment with Hicks. (ECF No. 82-21, at 17.) However, this non-Hispanic officer, and not Hicks, was on-duty and responsible for searching entrants to the facility at the time the cell phone slipped past the screening procedure. (ECF No. 82-21, at 12; ECF No. 82-11, at 3.) Additionally, two other non-Hispanic officers present during the April 24, 2013, search received no discipline in connection with the incident, even though they had control of the gate allowing entrants into the facility's secured inner perimeter and full view of the screening area to see what has and has not been screened. (ECF No. 82-1 ¶¶ 47, 49, 77-79, 117; ECF No. 86 ¶¶ 47, 49, 77-79, 117.) Moreover, a non-Hispanic supervising officer who failed to follow appropriate security procedure in

connection with the same incident, and then provided untruthful information about her compliance, received a disciplinary suspension only 1/6 as long as the suspension officer Hicks received. (ECF No. 82-1 ¶¶ 73-74; ECF No. 86 ¶¶ 73-74.)

Defendants argue that none of these individuals are similarly situated to Hicks, and therefore their lesser discipline cannot give rise to an inference of unlawful discrimination. This is an argument more appropriate for a jury. When viewing the evidence in the light most favorable to her, Hicks has met her burden to demonstrate an inference of discrimination by showing that these non-Hispanic individuals received more favorable treatment than Hicks for their role in the same incident. *Cf. Sarullo*, 352 F.3d at 797 n.7 (noting that an inference of discrimination arises if the employer's actual or attempted treatment of similarly situated employees outside the protected class is more favorable than the employer's treatment of the plaintiff).

### 2. Pretext for Discrimination

Defendants also argue that Hicks cannot demonstrate that Defendants' proffered reasons for her termination—Hicks's violations of the security policy—are pretextual covers for an actual discriminatory motive. The Court disagrees because there is sufficient evidence from which a reasonable fact-finder could find pretext. *See Jones*, 198 F.3d at 413. Namely, Hicks has put forth evidence that non-Hispanic officers were received more favorable treatment for their roles in the same incident. *See Simpson*, 142 F.3d at 645; part IV.A.1., *supra* (discussing, in the context of Hicks's prima facie case,[5] the lesser punishments non-Hispanic officers received for their roles in the April 24, 2013 search).

---

[5] Given that "the prima facie case and pretext inquiries often overlap . . . evidence supporting the prima facie case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [courts] to ration the evidence between one stage or the other." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).

In response, Defendants raise the same arguments here as against Hicks's prima facie case. The Court again rejects those arguments, for the same reasons. *See* part IV.A.1, *supra*.

### B. Hostile Work Environment Claim Against Caldarise[6]

Defendants also urge this Court to grant summary judgment to Caldarise on Hicks's claim for a hostile work environment because Caldarise did not know Hicks was Hispanic nor that she had filed an EEOC charge. The Court denies summary judgment on this count because the evidence presents a genuine issue of material fact for the jury.

To prevail on a claim for a hostile work environment, Hicks must establish five points:

> (1) [s]he suffered intentional discrimination because [either she (a) was Hispanic or (b) had engaged in protected activity[7]]; (2) the discrimination was pervasive and regular[[8]]; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability.

*Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)); *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017). When analyzing "the elements of a hostile work environment claim, the record must be evaluated as a whole to decide whether [Hicks] has proved . . . her case." *Cardenas*, 269 F.3d at 260-61. Because Defendants challenge only the first point,[9] the Court limits its discussion

---

[6] "Hicks withdraws her claim of a hostile work environment against Willie and focuses her argument against Caldarise alone." (ECF No. 82, at 24 n.6.)

[7] Filing an EEOC charge is protected activity. *See* 42 U.S.C. § 2000e-3(a).

[8] The Third Circuit now recognizes that the appropriate inquiry is whether the conduct is "severe or pervasive," rather than "pervasive and regular." *See, e.g.*, *Hamera v. Cty. of Berks*, 248 F. App'x 422, 424 n.2 (3d Cir. 2007).

[9] Defendants write in a footnote, "Nor has plaintiff established, and indeed she cannot establish, other elements of a hostile work environment claim." (ECF No. 77-14, at 40 n.29.) The Court declines to consider this argument, both because the Court will not consider footnotes used to exceed the page limitations imposed by the local rules, and because it is

accordingly.

To meet her burden under the first element, Hicks need not demonstrate any "discriminatory 'animus,'" but instead need only show that "a reasonable factfinder could view the evidence as showing that [Caldarise's] treatment was attributable to" the fact that Hicks is Hispanic or had engaged in protected activity. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 277 (3d Cir. 2001). The important question is whether any harassment is motivated by either the fact that Hicks is Hispanic or that she engaged in protected activity, even if that harassment does not on its face indicates its discriminatory motive. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148-49 (3d Cir. 1999). "Direct proof" of a discriminatory motive is not required because "the intent to discriminate can be inferred" from the surrounding circumstances. *Abramson*, 260 F.3d at 278. For claims involving retaliation, temporal proximity between the protected activity and the discriminatory conduct suggests an intent to retaliate, as does a pattern of harassment and antagonism following the protected activity. *See Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). For claims involving discrimination, "the use of 'code words' such as 'all of you' and 'one of them' could be sufficient evidence from which a jury could find an intent to discriminate." *Abramson*, 260 F.3d at 278.

Hicks has put forth enough evidence from which a reasonable fact-finder could determine that Caldarise acted with discriminatory motive, creating a genuine issue of material fact for trial. First, the Court's earlier discussion notes the differential disciplinary sanctions given to Hicks and to other non-Hispanic officers involved in the same April 23, 2014 search provide sufficient

> insufficiently briefed. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (waiver of insufficiently briefed argument); *supra* note 1 (use of footnotes to exceed page limits). If the Court were to consider this argument on its merits, the argument would fail for the reasons explained earlier in this opinion.

evidence from which a fact-finder could infer a discriminatory intent. *See* part IV.A.1, *supra*. Caldarise's involvement in the issuance of that discipline likewise allows a reasonable fact-finder to infer that Caldarise's actions are attributable to a discriminatory motive. (ECF No. 82-26 ¶ 16.) Similarly, the record contains evidence that Caldarise imposed lesser sanctions on non-Hispanic officers involved in other, similar incidents—for instance, Caldarise imposed a 5-day suspension on a non-Hispanic officer who permitted a civilian without identification entry into the secured perimeter. (ECF No. 82-26 ¶ 16.) According to Hicks, Caldarise was also known to allow non-Hispanic officers to avoid suspension and instead undergo counseling and retraining when the officers violated rules, but Caldarise did not offer Hicks a similar opportunity. (ECF No. 82-26 ¶ 16.) The record additionally includes evidence that Caldarise engaged in other, facially neutral harassment. (ECF No. 82-26 ¶ 16.) A reasonable fact-finder could consider this evidence in conjunction with the evidence of differential treatment to determine that Caldarise's actions are attributable to the fact that Hicks was Hispanic. *Abramson*, 260 F.3d at 277.

Hicks has also put forth enough evidence from which a reasonable fact-finder could determine that Caldarise acted with a retaliatory motive. Hicks filed her EEOC charge on August 29, 2013. (ECF No. 82-24.) She testified that after she filed this charge, Caldarise began an increased campaign of harassment with incidents arising almost weekly. (ECF No. 82-26 ¶ 16.) Hicks testified that Caldarise would stare at her in an attempt to intimidate her. (ECF No. 82-3, at 97:14-18.) Hicks further testified that Caldarise spoke repeatedly to other officers about her disciplinary record, sometimes directly in front of her. (ECF No. 82-3, at 90:4-14, 95:21-25, 96:1-3.) According to Hicks's testimony, Caldarise projected a negative demeanor to Hicks, either behaving "very rude and nasty" to her or treat her "like [she] was not even there." (ECF No. 82-3, at 90:20-22.) Hicks even testified that Caldarise withheld security-sensitive

information from her about how an inmate drafted a fictional depiction of sexual activity featuring multiple female corrections officers—including Hicks—even as Hicks was ordered to transport another inmate from a location that included the authoring inmate. (ECF No. 82-3, at 92:13-25, 93:1-22.)

Caldarise raises several points though none entitles him to summary judgment. For instance, Caldarise points to his testimony that he did not know Hicks was Hispanic, nor that she had filed an EEOC charge. (ECF No. 77-3 ¶ 6; ECF No. 82-7, at 79:2-7.) Further, Caldarise notes that Hicks testified that she never heard him use any anti-Hispanic language, nor did she hear from others about Caldarise using any anti-Hispanic language. (ECF No. 77-2 ¶ 68; ECF No. 82-2 ¶ 68.) These arguments fail because they ask the Court to credit Caldarise's testimony and weigh it more favorably than Hick's evidence of (1) the disparate treatment of Hicks compared to non-Hispanic officers and (2) Caldarise's behavior towards Hicks following the filing of her EEOC charge. When reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255)). A reasonable jury could believe Caldarise's testimony that he was unaware of Hicks's race, but in light of the evidence of disparate treatment of Hicks compared to non-Hispanic officers, a reasonable jury could also infer that Caldarise did know that Hicks was Hispanic and that his actions were attributable to that fact. *See Abramson*, 260 F.3d at 277. Likewise, a reasonable jury could believe Caldarise's testimony that he did not know Hicks filed an EEOC charge, but in light of the evidence of Caldarise's behavior towards Hicks following the filing of her EEOC charge, a reasonable jury could also infer that he was aware of Hicks's EEOC charge and that his actions constituted

retaliation for her decision to file the charge. *See Robinson*, 982 F.2d at 895. These genuine issues of material fact preclude the Court from granting summary judgment on these grounds.

Caldarise also points to evidence explaining that either he was not responsible for the differential treatment or that the differential treatment occurred for reasons other than racial differences. (ECF No. 85, at 9-13.) In a similar vein, Caldarise argues that the retaliatory treatment to which Hicks testifies either never happened, or the conduct of which Hicks complains is taken out of context. (ECF No. 85, at 12-13.) These arguments also fail because they ask the Court to choose between two competing theories with evidence on both sides. When reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255)).

Additionally, Caldarise provides statistical analysis purporting to show that Hispanic officers are not treated worse than non-Hispanic officers in disciplinary matters. (ECF No. 85, at 4.) A reasonable jury could find flaws in the statistical analysis: for instance, a reasonable jury could find that the data-set was incomplete or over-inclusive. A jury that does so could reasonably disregard the statistical analysis and credit evidence concerning disparate treatment of Hicks compared to non-Hispanic officers.

In light of the conflicting evidence, genuine issues of material fact exist. Accordingly, the Court may not grant summary judgment to Caldarise on Hicks's hostile work environment claims.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **DENIED**. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated: October 30, 2019